IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GAVATA KING-FIELDS                        *
                Plaintiff,
           vs.                      *    CIVIL ACTION NO.  ELH-11-1491

ISIAH LEGGETT, et al.                     *
                Defendants.
                      ***

MEMORANDUM

      Gavata King-Fields ("King-Fields"), the self-represented plaintiff, was previously detained at the Montgomery County Correctional Facility ("MCCF"), and is currently an inmate in the Maryland Division of Correction.  She filed suit under 42 U.S.C. § 1983 against County Executive Isiah Leggett; MCCF Director Arthur Wallenstein; MCCF Warden Robert Green; MCCF Deputy Warden Suzy Malagari; MCCF Counselor Carla Johnson; MCCF Security Supervisor Captain David; and MCCF Case Manager K. Davis, defendants.  Plaintiff contends, *inter alia*, that, while she was housed at MCCF, she was seriously assaulted by another inmate, Emily Geller, and that the defendants failed to protect her during her incarceration.  ECF 1.  She also alleges that she was denied due process during her adjustment proceedings; and her access to the courts was thwarted. Plaintiff seeks injunctive relief and compensatory and punitive damages.  *Id.*[1]  *See* ECF 1.

      It is not entirely clear whether defendants were sued in their official and/or individual capacities.  Although defendants claim they were sued only in their official capacities, *see* ECF 14-1 at 2, plaintiff asserts that the defendants "acted under the color of the law" and also alleges that they

---

[1] Because plaintiff is self-represented, her filings are "liberally construed" and "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).

acted "[i]n each of their individual capacities…."  See ECF 1, at 7.

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF 14, along with a supporting memorandum.  ECF 14-1.  Plaintiff opposes the motion.  *See* ECF 16.   No hearing is necessary to resolve the matter.  *See* Local Rule 105.6.

## STANDARD OF REVIEW

Defendants seek dismissal of plaintiff's action, pursuant to F.R. Civ. P. 12(b)(6), claiming that plaintiff has failed to state a §1983 claim.   In considering the defendants' motion, the court accepts all well-pleaded allegations of the complaint as true, and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff as the non-moving party.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the simplified pleading standard" of Rule 8(a)).

The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007) (citation omitted).

Although F. R. Civ. P. 8(a)(2) requires only a "short and plain statement," the Supreme Court has explained that a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008).  Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . .") (citation omitted); *see also Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  Put another way, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010).  On the other hand, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted).  And, with respect

to a civil rights complaint, the court "'must be especially solicitous of the wrongs alleged'" and "'must not dismiss the claim unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'"  *Edwards*, 178 F.3d at 244 (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)) (emphasis added in *Edwards*); *see also Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).   Nevertheless, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

## FACTUAL SUMMARY

Plaintiff alleges that on October 4, 2010, during the dinner meal, she was "beaten to the point of blood shed," Complaint, ECF 1, ¶ 12, by fellow inmate Emily Geller, a "convicted murderer." ECF 1.  Plaintiff describes herself as a "'white collar' offender."  *Id.*  According to plaintiff, Geller exhibited suicidal behavior in early September of 2010, which resulted in her transfer between units.  Further, she states that Geller "had a bad institutional adjustment record."  On an unspecified date, Geller was placed in "A-Pod," the same housing pod as plaintiff.  ECF 1, ¶ 13.  Geller and plaintiff were both friendly with another inmate, Patricia Torry.  Plaintiff details the social interactions between Torry, Geller, and plaintiff, noting that the relationships were marked by jealousy, rumor, threats of revealing private information, and threats of violence.  It appears from plaintiff's filings that Torry and Geller may have been in a romantic relationship and Torry attempted to use plaintiff to incite jealousy in Geller.

Plaintiff describes the hostilities between Torry, Geller, and plaintiff as progressive in nature.  She claims that, for her own protection, she endeavored to enlist the assistance of correctional staff

4

with respect to the escalating situation, but they were unresponsive.  Further, she indicates that she attempted to have correctional officers record the threats being made against her by Torry, to no avail.  ECF 1, 6.  According to plaintiff, on September 23, 2010, she asked family members to contact defendant David to relay her fear regarding the environment in the unit.  ECF 1.  On that date an argument developed between the three inmates and all three were disciplined with cell restriction. ECF 1, ¶ 15.  While on restriction Torry, in violation of the MCCF handbook, yelled out threats against plaintiff.  Although correction staff allegedly heard the threats, they ignored them.  *Id.*

Plaintiff contends that at some point she wrote a letter to Defendant David, requesting protection.  On September 24, 2010, in response to that letter, David placed plaintiff on administrative segregation for her personal safety.  ECF 1, ¶ 17.  While on administrative segregation, plaintiff was "locked down" 23 hours a day.  In plaintiff's view, she was punished for the behavior of other inmates.  The next day, plaintiff wrote another letter to David, "begging to come off of Admin[istrative] Seg[regation]." ECF 1, ¶ 18.  On September 27, 2010, plaintiff signed a release so that she could be returned to the general population; in the release, she indicated that she had no concerns for her own safety or problems with Torry.  Plaintiff was removed from administrative segregation on September 28, 2010.  Complaint, ¶¶ 18-20.  According to plaintiff, at this time Geller was "locked down" for an unrelated disciplinary issue on another housing unit.  On the same date that plaintiff was released from administrative segregation, she was confronted by Torry in the common area.  Torry cursed at plaintiff, called her a snitch, and advised other inmates to stay away from plaintiff.  Torry was subsequently sentenced to a disciplinary term for an unspecified event.

Plaintiff alleges that, on October 4, 2010, Officer Davis conducted a mediation session

between plaintiff and Torry, at Torry's request.  Defendant Johnson was present at the meeting. During the meeting, Torry indicated that plaintiff was in possession of letters she wrote to plaintiff and requested they be turned over to her.  Plaintiff retrieved the items from her cell and returned to the meeting. Plaintiff states Torry repeatedly said during the meeting, and in the presence of correctional officers: "She is a snake.  And do you know what you do with a snake?  You take a snake and chop it off at the head."  According to plaintiff, correctional staff did nothing in response to these comments until plaintiff objected to them.  At that point staff advised Torry she was not permitted to make threats against plaintiff.  *Id.*  Torry was placed in a pod separate from plaintiff immediately following the mediation.  ECF 1, ¶ 24.

After the meeting, Geller confronted plaintiff regarding plaintiff's having turned the letters over to Torry at the meeting.  Plaintiff indicates she felt set up by the meeting—that it would appear to the other inmates she had snitched on Torry by turning over the letters.  Geller apparently overheard a conversation in which plaintiff advised another inmate that one result of the meeting was a recommendation that Torry be moved to a different housing pod. Geller became enraged, attacked plaintiff, and severely injured plaintiff's eye, for which she required medical attention.  *See* ECF 1, ¶ 24.  According to plaintiff, her "vision has yet to be fully restored."  ECF 1 at 4.

On October 7, 2010, plaintiff attended an "adjustment hearing."  She was found guilty of institutional infractions, was sentenced to 30 days of disciplinary segregation, and noted an appeal of that decision.  ECF 1, ¶ 27.  On October 20, 2010, plaintiff was transferred to the Maryland Department of Correction Institution for Women.  ECF 1, ¶ 35.

Plaintiff maintains that, before and after she was assaulted by Geller, Geller was permitted to move freely throughout the facility, in violation of detention center policy and procedures.  ECF 1.

She further alleges that Geller fraternized with staff, in violation of correctional center policy, and received special treatment from correctional staff.   Plaintiff indicates that she wrote to the staff, including David and Malagari, regarding the threats Geller and Torry had made toward her and her fear of being transported with Geller to their upcoming court date.  ECF 1.  She asserts that she was advised by unidentified MCCF staff:  "Everyone knows how [Geller] is and how she goes off about relationships.  She's been here a year."  *Id.*

Additional facts will be included in the Discussion.

DISCUSSION

Defendants urge the court to dismiss plaintiff's §1983 claims, asserting that plaintiff has failed to allege sufficient facts to establish that defendants "personally caused, or participated in, any alleged constitutional deprivation."  ECF 14 at 2.  They also claim that there are no facts to show that they acted with deliberate indifference, and no basis to find a constitutional violation.  *Id.*  Further, they argue that they are protected by qualified immunity and public official immunity.  *Id.*

Section 1983 is not "'a source of substantive rights, but a method for vindicating federal rights elsewhere conferred'" by the United States Constitution or federal statutes.  *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (quoting *Baker v. McCollan*, 443 U.S. 127, 144 (1979)); *see United States v. Lanier*, 520 U.S. 259, 272 (1997).  As to defendants Leggett, Wallenstein, and Green, defendants maintain that plaintiff has merely named them as individuals responsible for oversight of the correctional facility.  *See* ECF 14. I agree.

In her complaint, plaintiff alleges that she wrote to County Executive Leggett after the assault regarding difficulties she was experiencing at the MCCF.  Further, she alleges that Leggett told MCCF Director Wallenstein to respond to plaintiff's communication.  Plaintiff avers that Warden

Green is responsible for the day-to-day operation of MCCF and the welfare of all inmates.  ECF 1.

Plaintiff's allegations as to Leggett, Wallenstein, and Green are based upon the doctrine of *respondeat superior,* which generally does not apply in §1983 claims.  The Supreme Court said in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009): "In a § 1983 suit . . . masters do not answer for the torts of their servants — the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *See also Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit).

Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.  *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (*citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)).  Supervisory liability under §1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).  Plaintiff has pointed to no action or inaction on the part of defendants Leggett, Wallenstein, and Green that resulted in a constitutional injury.  Accordingly, plaintiff's claims against them shall be dismissed.

8

Defendants maintain that plaintiff's complaint against the remaining defendants is deficient because the allegations of personal involvement are minimal or reveal that defendants acted to protect plaintiff.  For example, David placed plaintiff in administrative segregation for her own safety; Johnson was present at a mediation on October 4, 2010, and was the facilitator at plaintiff's disciplinary hearing on October 7, 2010; and Davis had plaintiff sign a release before allowing her to be released from administrative segregation, and attempted to resolve the conflict between plaintiff and Torry.  ECF 14.

According to plaintiff, defendants Malagari, Johnson, David and Davis were aware of her plight and were deliberately indifferent in failing to provide adequate supervision and security to protect her, and therefore her right to be free from cruel and unusual punishment has been violated.[2] The Eighth Amendment recognizes this right.  *See  Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).  What the Supreme Court said in *Farmer v. Brennan*, 511 U.S. 825 (1994), is noteworthy:

> Prison officials have a duty . . .  to protect prisoners from violence at the hands of other prisoners.  Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id*.  at  833 (internal quotations and citations omitted).

In a failure to protect claim, a prisoner must show, first, that the harm suffered was

---

[2] As noted, the court reads plaintiff's complaint to also state claims for denial of access to courts and violation of due process during her adjustment hearing.  Defendants have not addressed these claims in their motion to dismiss.

objectively serious.  Second, the prisoner must show that prison officials acted with deliberate indifference.  *Id*. at 834.

In my view, plaintiff has alleged facts sufficient to withstand the motion to dismiss of Malagari, Johnson, David, and Davis.  The alleged harm suffered by plaintiff during the assault committed by Geller was serious.  Moreover, plaintiff detailed a pattern of escalating behavior between plaintiff, Geller, and Torry, and alleges that the information was repeatedly relayed to Malagari, Johnson, David, and Davis.  According to plaintiff, Malagari, Johnson, David, and Davis interacted regularly with her during her incarceration at MCCF and knew of the difficulties plaintiff was having with Torry and Geller.  She also alleges that these defendants were aware that Torry and Geller posed a risk of harm to plaintiff, but took little or no action to protect plaintiff.  To the contrary, taking plaintiff's allegations of fact as true, as the court must, the correctional employees allegedly turned a blind eye to the problematic relationships among the three inmates.

Defendants also assert that they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (1982).  *See also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc), *cert. denied*, _____ U.S. _____, No. 11-458, 2011 WL 4853873 (Nov. 28, 2011).  Qualified immunity insures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

The qualified immunity test originally set out in *Harlow* has been expressed in a variety of ways.  For example, the Court has inquired whether "[t]he contours of" a plaintiff's asserted right

10

were "sufficiently clear that a reasonable official would understand that what he is doing violates that right," *i.e.,* whether "in the light of pre-existing law the unlawfulness" of "an official action is ... apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  The Court has also phrased "[t]he dispositive inquiry in determining whether a right is clearly established [as] whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier v. Katz,* 533 U.S. 194,  202 (2001), or "whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information [he] possessed." *Wilson v. Layne,* 526 U.S. 603, 615 (1999).   The sequence for resolving a government official's qualified immunity claim is left to the discretion of the trial court.   *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Purnell*, 652 F.3d at 531; *Melgar v. Greene*, 593 F.3d 348, 353 (4ᵗʰ Cir. 2010).

The court recognizes the value of an early determination of immunity defenses.  *See* ECF 14-1 at 13-14 (citing, *e.g., Torchinsky v. Siwinski*, 942 F.2d 257, 260-61 (4ᵗʰ Cir. 1991)).   But, the determination of whether defendants are entitled to qualified immunity is more appropriately addressed after the facts of the case have been further developed and a determination can be made as to whether plaintiff has suffered a violation of her constitutional rights.   Accordingly, dismissal of plaintiff's complaint based on qualified immunity is not proper at this time.

Defendants also rely on the doctrine of public official immunity under Maryland law.  "In Maryland, public official immunity is recognized both at common law and by statute." *District Heights v. Denny*, 719 A.2d 998, 1002 (Md. App. 1998).  "Maryland case law has affirmatively established that, while performing their duties, law enforcement officers are public officials and, thus, fall within the scope of qualified immunity as to their discretionary acts." *Williams v. Baltimore*, 359 Md. 101, 138, 753 A.2d 41, 61 (2000); *see Thomas v. City of Annapolis*, 113 Md.

11

App. 440, 442, 688 A.2d 448 (1997).  Correctional officers are public officials.  *Livesay v. Baltimore County,* 862 A.2d 33, 39 (Md. 2004).

In the Local Government Tort Claims Act ("LGTCA"), Md. Code (2006 Repl. Vol., 2011 Supp.), § 5-507(b)(1) of the Courts and Judicial Proceedings Article, the statute provides that an official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.  In this context, Maryland courts define malice as conduct "motivated by ill will, by an improper motive, or by an affirmative intent to injure."  *Shoemaker v. Smith,* 725 A.2d 549 (1999).

As with the defense of qualified immunity to the constitutional claims, the court cannot say, on the undeveloped record before it, whether defendants are entitled to public official immunity. Dismissal of plaintiff's claim based on public official immunity is inappropriate at this time, except to the extent that plaintiffs' claims are founded on negligence.  In the context of this case, negligent conduct is not actionable.

Plaintiff also asks the court to enter an Order directing the defendants to take certain steps regarding classification of inmates, dealing with threats, and investigating staff at MCCF.  ECF 1. It is clear from the pleadings and records before the court, however, that plaintiff is no longer housed at the Montgomery County Correctional Facility.  Plaintiff's transfer from MCCF renders moot her claim for injunctive relief.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987)*; see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985)(past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if

12

unaccompanied by any continuing present injury or real and immediate threat of repeated injury).

"[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome." *United States v. Hardy,* 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)). "The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *Id.* (quoting *DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974)). An actual controversy must exist at all times while the case is pending. *See Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974). Where developments occur during the course of a case which prevent the court from being able to grant the relief requested, the case must be dismissed. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968). Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained…" *See Lewis v. Continental Bank* Corp,  494 U.S. 472, 480 (1990).

For the reasons set forth above, defendants' motion to dismiss shall be granted in part and denied in part. Plaintiff's claims against defendants Leggett, Wallenstein and Green shall be dismissed; plaintiff's claim for injunctive relief shall be denied; plaintiffs' negligence claims against defendants, if any, are dismissed; all other claims shall proceed.

A separate Order follows, implementing the rulings. In addition, the court will issue a separate Scheduling Order to govern this case.

Date:  January 20, 2012                    _____/s/_____
                                           Ellen Lipton Hollander
                                           United States District Judge

13